Constance McCormick, the Duly Appointed and Qualified Executrix Under the Last Will and Testament of L. Hamilton McCormick, Deceased, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 88951.  Promulgated August 10, 1938.

*J. Francis Dammann, Esq.*, and *Stuart J. Templeton, Esq.*, for the petitioner.

*R. F. Staubly, Esq.*, for the respondent.

### OPINION.

Kern: This proceeding arises on respondent's determination of a deficiency in Federal estate taxes of $247,200.86. Part of this deficiency has been consented to by the petitioner. Under the original determination respondent included in the gross estate only one-half of the corpus of the trust created by decedent on April 28, 1923, the portion set aside for the decedent's wife, on the ground that it was a transfer intended to take effect in possession or enjoyment at or after death under section 302 (c) of the Revenue Act of 1926, set out in the margin.[1]  Conceding now, however, that there

---

[1] Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*          \*          \*          \*          \*          \*          \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

are no grounds for such an inclusion under the Supreme Court's construction of the provision applied in *May* v. *Heiner*, 281 U. S. 238; and that the section of the 1926 Revenue Act, as amended by the Joint Resolution of March 3, 1931, can not be applied retroactively, *Hassett* v. *Welch*, 303 U. S. 303; respondent in his amended answer pleads affirmatively that the whole trust corpus is includable as having been transferred in contemplation of death, and in his brief relies solely on this ground.

The burden of proof of the issue which respondent has affirmatively raised rests, of course, upon him. *Security-First National Bank of Los Angeles, Executor*, 36 B. T. A. 633, 637; *Mamie S. Hammonds*, 38 B. T. A. 4, see page 10.

The facts were stipulated, the original trust instrument, its amending instrument, and decedent's will being entered under the same stipulation, and are incorporated here by reference. We need do no more than relate those facts which are material to decision of the case.

On April 28, 1923, decedent made a transfer in trust for the benefit of his wife and children, and a year and eight months later, on December 29, 1924, amended it. Its significant provisions will be set out hereinafter. The corpus consisted of property which decedent had received from his father through a spendthrift trust terminating in 1920, and had a value at the time of decedent's death of $1,118,611.45.

Decedent died on February 2, 1934, at the age of seventy-four, survived by his widow, then sixty-eight, and three sons, aged forty-six, forty-five, and forty-two, respectively. At the time of the transfer decedent was sixty-three, and, in the words of the stipulation,

\* \* \* was in good health for a man of his years. The execution of the trust was not prompted by a condition of body or mind which would have led him to believe that death was imminent or near at hand.

\*     \*     \*     \*     \*     \*     \*

The decedent's wife prior to April, 1923, had no independent means, and, although all his children were adults, the decedent had been in the habit of contributing substantial amounts to their support yearly.

Decedent transferred certain property to his wife in trust, dividing the fund into four trusts, one-half for the benefit of his wife and one-sixth each for his three sons (art. 3), the net income from each trust being paid over to the beneficiaries or to their issue, but the amount was to be limited to specific sums if there were any outstanding encumbrances on the trust property, the balance of the income being applied in discharge of the encumbrances (art. 4). Some check was retained by the settlor in the original trust instrument over payment of part of this residue to his wife, but his power was removed by the amendment of December 29, 1924. The trust was to

terminate upon the death of the last survivor of the settlor and his beneficiaries (art. 5), but this provision was changed by the amendment of 1924 so that the death of the last survivor of the beneficiaries should terminate the trust. On termination the principal was to be distributed to the beneficiaries' heirs of the body, with a gift over to charity on default of issue. Amendment or cancellation of the trust could be effected by any four of the five persons constituting the settlor and the beneficiaries or their representatives (art. 6), but this was also altered by amendment so as to deprive the settlor of any power to amend. Other provisions are not here pertinent. The stipulation continues:

The declared purposes and intentions of the decedent in making the trust agreement were: (1) to provide for his wife and his three sons independent yearly incomes, and for the purposes otherwise disclosed by the context of the trust deed; and (2) to reduce his own income taxes.

Income was in fact accumulated by the trustee, the amounts being stipulated; and the Federal income taxes of the settlor were in fact materially decreased after the transfer in trust, the sums paid by the settlor and the beneficiaries both before and after the transfer being stipulated.

Decedent by his will left certain Chicago real estate to his wife, and transferred all the residue of his estate to his wife and three sons in trust for their benefit.

On these facts respondent grounds his contention that the trust transfer of 1923 was made in contemplation of death. The contention rests apparently on what is urged as a necessary inference from the facts, that decedent was sixty-three at the time of the trust transfer, and thereby parted with approximately 50 percent of his estate to the natural objects of his bounty. Certain special considerations urged by the respondent, based on provisions in the original trust indenture by which the settlor retained control over the income, are inapplicable in view of the amendment of a year and a half later by which the settlor divested himself of all power. But even if these provisions had been retained they would not affect the question in issue. There is no question of a transfer made after the effective date of the Revenue Act of 1926, and within two years of death, as to which a rebuttable presumption of contemplation of death may be raised, section 302 (c). On the contrary, as we have said, respondent has the burden of proof, and his contention amounts to little more than that we should infer that contemplation of death was the impelling cause of the transfer from certain merely evidentiary facts, such as decedent's age, the amount of the trust fund, and the relation to him of the beneficiaries. This we can not do, and it does not require extended discussion to state the reason why,

In *United States* v. *Wells*, 283 U. S. 102, the Supreme Court said:

\* \* \* The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. \* \* \* As the transfer may otherwise have all the indicia of a valid gift inter vivos, the differentiating factor must be found in the transferor's motive. Death must be "contemplated," that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. \* \* \* The question, necessarily, is as to the state of mind of the donor. \* \* \*

\* \* \* Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer, \* \* \*.

If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. \* \* \* As illustrating transfers found to be related to purposes associated with life, rather than with the distribution of property in anticipation of death, the Government mentions transfers made "for the purpose of relieving the donor of the cares of management or in order that his children may experience the responsibilities of business under his guidance and supervision." \* \* \*

These passages have become the *locus classicus* on the subject, and are quoted (in part) with approval by the Supreme Court in *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48.

The situation in the *Wells* case involved gifts by a father to his children, which the Court thought, despite the fact that the decedent was then in his seventies, were made to afford his children independence and to give them experience in the handling of money, motives associated with life and not with death. In the *St. Louis Union Trust Co.* case, *supra*, the Supreme Court said:

\* \* \* The Circuit Court of Appeals reached the opposite conclusion. It found on the evidence that the decedent, in making the trusts, was actuated by two motives: (1) To make his children independent; (2) to avoid high surtaxes on his income; and that both of these motives were associated with life. Evidence that the decedent was in any way influenced in what he did by the thought of death, that court said, was entirely lacking.

It is true that the decedent at the time of making the trusts was 76 years of age. But the evidence shows clearly that he was in excellent health, attending regularly to business, apparently was not looking forward in any way to his death \* \* \*. The beneficiaries were all past 21 years of age, and the record shows only that the grantor's objects were to make them allowances in order to get rid of the nuisance of treating them as children, make them independent so they would know what they were to get each year, and, as he had ample income of his own, to avoid the high surtax and make each of his children pay a tax on the independent income received.

We are unable to find anything in the record which conflicts with the statement of the court below that evidence that decedent was in any way influenced by the thought of death was wholly lacking. \* \* \*

The circumstances afforded by these two cases parallel to those of the instant case need no further emphasis, and citations need not be multiplied. Neither the motive of providing independent incomes for his wife and sons, nor that of reducing his income tax, cf. *Robert Todd Lincoln Estate*, 24 B. T. A. 334, indicate in any way that the decedent's thought of death was the impelling cause of the transfer. We hold, therefore, for the petitioner.

*Decision will be entered under Rule 50.*

